Slip Op. 14- 96

UNITED STATES COURT OF INTERNATIONAL TRADE

—————————————————————

ROCKWELL AUTOMATION, INC.,            :
F/K/A ROCKWELL AUTOMATION/
ALLEN-BRADLEY CO., LLC,               :

                          Plaintiff,  :          Court Nos. 05-00269, 05-00582,
                                                 06-00054, 06-00348, 07-00110,
                                                 07-00294, 10-00230, 10-00245,
                        v.            :          11-00018, 11-00250, 12-00001

UNITED STATES,                        :

                         Defendant.   :

—————————————————————

[Granting out-of-time motions for extensions of time to allow actions to remain on Reserve Calendar]

                                              Dated: August 18, 2014

       John M. Peterson, Russell A. Semmel, and Maria E. Celis, Neville Peterson LLP, of New York, New York, for Plaintiff.

       Alexander Vanderweide, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, New York, for Defendant.  With him on the brief were Stuart F. Delery, Assistant Attorney General, and Amy M. Rubin, Assistant Director, Commercial Litigation Branch.

## OPINION

RIDGWAY, Judge:

       In the 11 above-captioned actions, Plaintiff Rockwell Automation, Inc. contests the

classification of "certain short-body timing relays (SBTRs) used in manufacturing applications" that

Rockwell imported into the United States.  Plaintiff's Consent Motion for Leave to File Out of Time

and for Extension of Time to Remain on Reserve Calendar ("Pl.'s Out-of-Time Motion") at 1; *see*

*also* Memorandum in Support of Plaintiff's Amended Consent Motion for Leave to File Out of

Time, and to Extend Time to Remain on Reserve Calendar ("Pl.'s Supp. Brief") at 2.  According to

Rockwell, the Bureau of Customs and Border Protection "classified the merchandise in liquidation

under HTSUS 9107.00.80 as time switches with a clock or watch movement or synchronous motor, and assessed duties accordingly." *Id*. Rockwell maintains that "the merchandise is properly classified under HTSUS 8536.49.00 as electrical relays, at a lower rate of duty." *Id*. Rockwell advises that, "[t]o date, twenty cases concerning this issue, including the eleven at bar, have been filed" in this court. *Id*. Rockwell further explains that one case, Court No. 03-00007, "was selected as a 'test case' and was litigated on the merits," with summary judgment entered in Rockwell's favor. *Id*.; *see* <u>Rockwell Automation, Inc. v. United States</u>, 31 CIT 692 (2007); <u>Rockwell Automation, Inc. v. United States</u>, 31 CIT 788 (2007).

Since the 2007 decision in the test case, according to Rockwell, its counsel has "worked diligently" with counsel for the Government "to attempt to dispose of all of the related cases." Pl.'s Supp. Brief at 2. Rockwell states that "[t]he parties have been able to work out stipulated judgments on agreed statements of fact . . . in seven of the cases, and continue to work toward disposition of [the 11 actions here at issue]," as well as one additional case, Court No. 13-00185, which – according to Rockwell – "is on the Reserve Calendar[] for its original eighteen-month period, through November 30, 2014." *Id*. at 2-3.

Pending before the court is Plaintiff's Consent Motion for Leave to File Out of Time and for Extension of Time to Remain on Reserve Calendar (filed July 2, 2014), filed in each of the 11 actions, as supplemented by Plaintiff's Amended Consent Motion for Leave to File Out of Time, and to Extend Time to Remain on Reserve Calendar, which is, in turn, supported by Plaintiff's Supplemental Brief (both filed July 17, 2014).[1] The Government has weighed in as well. *See*

_____

[1]The papers that Rockwell filed on July 17, 2014 also included a document captioned Plaintiff's Response to Court's Order to Show Cause; and Motion to Amend Plaintiff's Consent

*generally* Defendant's Response to Plaintiff's Amended Consent Motion for Leave to File Out of Time, and to Extend Time to Remain on Reserve Calendar (filed July 18, 2014) ("Def.'s Response Brief").

As summarized below, Plaintiff's Amended Consent Motion for Leave to File Out of Time, and to Extend Time to Remain on Reserve Calendar is granted as to all 11 actions, qualified by several significant reservations and understandings.

## I. <u>Applicable Legal Standards</u>

Two rules of the court bear on Rockwell's pending motions – Rule 6 and Rule 83.  USCIT Rule 83 (captioned "Reserve Calendar") governs cases on the Reserve Calendar, including the 11 actions here.  In general, an action commenced under 28 U.S.C. § 1581(a) or (b) is placed on a Reserve Calendar when a summons is filed.  *See* USCIT R. 83(a).  The action may remain on the Reserve Calendar for an 18-month period.  *Id*.  The rules further specify that "[a] case may be removed from the Reserve Calendar on:  (1) assignment; (2) filing of a complaint; (3) granting of a motion for consolidation pursuant to Rule 42; (4) granting of a motion for suspension under a test case pursuant to Rule 84; or (5) filing of a stipulation for judgment on agreed statement of facts pursuant to rule 58.1."  USCIT R. 83(b) ("Removal").

Of particular relevance here are two other subsections of Rule 83.  The first – Rule 83(d), captioned "Extension of Time" – provides that "[t]he court may grant an extension of time for [a] case to remain on the Reserve Calendar for good cause."  *See* USCIT R. 83(d).  However, the second

---

Motion for Leave to File Out of Time, and to Extend Time to Remain on Reserve Calendar ("Pl.'s Response to Show Cause Order").

sentence of Rule 83(d) requires that "[a] motion for an extension of time [to remain on the Reserve

Calendar] must be made *at least 30 days prior to the expiration of the 18-month period* [or later, if

the 18-month period has been extended pursuant to USCIT Rule 83(d)]."  *Id*. (emphasis added).

    The second key subsection is Rule 83(c), which is ominously but unambiguously captioned

"Dismissal for Lack of Prosecution."  In its entirety, that subsection reads:

> A case not removed from the Reserve Calendar within the 18-month period
> [specified in Rule 83(a), or later if that period has been extended pursuant to USCIT
> Rule 83(d)] *will be dismissed for lack of prosecution* and *the clerk will enter an
> order of dismissal without further direction from the court* unless a motion is
> pending.  If a pending motion is denied and less than 14 days remain in which the
> case may remain on the Reserve Calendar, the case will remain on the Reserve
> Calendar for 14 days from the date of entry of the order denying the motion.

USCIT R. 83(c) (emphases added).  In short, the terms of Rule 83(c) are unequivocal.  In relevant

part, they mandate the dismissal for lack of prosecution of an action that is not removed from the

Reserve Calendar within the 18-month period (as that period may be extended).  Rule 83(c) instructs

the clerk in no uncertain terms to "enter an order of dismissal without further direction from the

court," unless a motion (such as a motion to extend the time to remain on the Reserve Calendar) is

pending at the time the clerk otherwise would be required to enter such an order.

    USCIT Rule 6 governs "Computing and Extending Time; Time for Motion Papers."  Rule

6(b), in particular, addresses "Extending Time."  Rule 6(b)(1)(A) governs timely-filed motions for

extensions of time, and authorizes a court to grant an extension of time upon a showing of "good

cause" – a relatively lenient standard – where an extension is sought before the deadline at issue has

expired.  *See generally* USCIT R. 6(b)(1)(A); 1 Moore's Federal Practice § 6.06[2], p. 6-32 (3d ed.

2014) (explaining, *inter alia*, that "[w]hen a party requests an extension before the time period has

expired, the [court] usually will be liberal in granting the request").  In contrast, Rule 6(b)(1)(B) concerns untimely (*i.e.*, out-of-time) motions for extensions of time.  *See generally* USCIT R. 6(b)(1)(B).  Such motions may be granted only where a party makes a showing of "excusable neglect or circumstances beyond the control of the party" – an exacting standard that is much more stringent than the demonstration of "good cause" that is required in circumstances where an extension of time is timely sought.  USCIT R. 6(b)(1)(B); *see also* 1 Moore's Federal Practice § 6.06[3][a], pp. 6-33 to 6-43 (explaining that party seeking out-of-time extension of time "must show cause and demonstrate that the failure to act was the result of 'excusable neglect'").

As the U.S. Court of Appeals for the Fourth Circuit has succinctly put it, "'[e]xcusable neglect' is not easily demonstrated, nor was it intended to be." Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 534 (4th Cir. 1996).  Findings of excusable neglect should be reserved for "extraordinary cases." *Id*.  Similarly, in the words of the Sixth Circuit, "the excusable neglect standard has consistently been held to be strict," Turner v. City of Taylor, 412 F.3d 629, 650 (6th Cir. 2005) (quoting Marsh v. Richardson, 873 F.2d 129, 130 (6th Cir. 1989)), and "requires 'unique or extraordinary circumstances.'" Duncan v. Washington, 1994 WL 232397 * 2 (6th Cir. 1994). And the Second Circuit states that, "[i]n [its] cases addressing when neglect is 'excusable,' [the courts] have . . . taken a hard line." Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003).

Moreover, even where "excusable neglect" is demonstrated, the judge retains discretion to deny relief. *See, e.g.*, McCool v. Bridgestone/Firestone North American Tire, LLC, 222 Fed. Appx. 847, 857-58 (11th Cir. 2007).  An out-of-time extension of time thus "is by no means a matter of

right." *See* 4B C. Wright & A. Miller, Federal Practice and Procedure § 1165, pp. 531-32 & n.13 (3d ed. 2014) ("Wright & Miller").

The seminal decision on the definition of "excusable neglect" is the Supreme Court's 1993 decision in Pioneer. *See generally* Pioneer Inv. Services v. Brunswick Associates, 507 U.S. 380 (1993). The Supreme Court granted *certiorari* in that case to resolve a conflict among the Courts of Appeals as to whether a rule of procedure authorizing the granting of out-of-time extensions of time for "excusable neglect" required a movant to demonstrate that its failure to timely act was due to "circumstances beyond the movant's control" or whether a "more flexible analysis" applied. *See* Pioneer, 507 U.S. at 386-87 & n.3. The Supreme Court concluded that the "excusable neglect" standard "is not limited strictly to omissions caused by circumstances beyond the control of the movant" and that it extends beyond such circumstances to certain limited instances of "neglect" that may be "excusable." *Id.*, 507 U.S. at 392, 395.[2]

The Supreme Court expressly stated that grounds such as "inadvertence, ignorance of the rules, [and] mistakes construing the rules do not usually constitute 'excusable' neglect," and held that – "at bottom" – a determination as to whether "a party's neglect of a deadline" is "excusable" is an "equitable" determination, "taking account of *all relevant circumstances* surrounding the party's omission." Pioneer, 507 U.S. at 392, 395 (emphasis added). Such relevant factors include "the danger of prejudice to the [other party/parties], the length of the delay and its potential impact on judicial proceedings, *the reason for the delay*, *including whether it* [*i.e.*, *the delay*] *was within*

---

[2]Unlike the parallel Federal Rule of Civil Procedure, which refers only to "excusable neglect," Rule 6(b)(1)(B) of this Court refers specifically to "circumstances beyond the control of the [moving] party," in addition to "excusable neglect." *Compare* Fed. R. Civ. P. 6(b) (providing for out-of-time extension of time upon showing of "excusable neglect") *and* USCIT R. 6(b)(1)(B).

*the reasonable control of the movant*, and whether the movant acted in good faith." *Id.*, 507 U.S. at 395 (emphasis added).[3]  Finally, the Supreme Court was quite explicit in <u>Pioneer</u> that there is nothing inappropriate in penalizing parties for the conduct of their attorneys, squarely holding that parties must "be held accountable for the acts and omissions of their chosen counsel." *Id.*, 507 U.S. at 396-97.

Although Rockwell seeks to cast <u>Pioneer</u> as "[t]he most recent authoritative guidance on the meaning of 'excusable neglect,'" courts across the country have had occasion to render hundreds of decisions applying <u>Pioneer</u> to a very broad spectrum of fact patterns in the two decades since the Supreme Court issued that decision.  *See* Pl.'s Supp. Brief at 9-10; *see generally*, *e.g.*, 1 Moore's Federal Practice § 6.06[3], pp. 6-33 to 6-47 (surveying law on "excusable neglect"); 4B Wright & Miller § 1165, pp. 523-56 (same).  The reasons that Rockwell offers up here in an effort to explain away its failure to timely seek an extension of time have been considered and rejected time and again.  When it comes to "excusable neglect," there is virtually nothing new under the sun.

## II.  <u>Rockwell's Pending Motions</u>

Rockwell concedes, as it must, that June 23, 2014 was the Reserve Calendar deadline in all 11 of the actions at issue here.  *See* Pl.'s Out-of-Time Motion at 1; Order For Leave to File Out of Time, and For Extension of Time to Remain on Reserve Calendar (March 31, 2014) (extending time on Reserve Calendar through June 23, 2014, for 11 actions at bar).  Thus, May 27, 2014 was the

---

[3]As Rockwell acknowledges, and as discussed in greater detail below, the weight of the authority holds that "the most important consideration in whether to grant leave to file out of time is the reason for the delay in filing."  Pl.'s Supp. Brief at 11-12; *see also* n.7, *infra* (and select representative cases cited there).

deadline for Rockwell's filing of a timely motion for an extension of time to remain on the Reserve

Calendar.  Pl.'s Supp. Brief at 9; USCIT R. 83(d) (requiring that any motion for an extension to

remain on the Reserve Calendar "must be made at least 30 days prior to the expiration" of the

Reserve Calendar deadline).  Rockwell nevertheless failed to seek an extension of time until July

2, 2014.  *See* Pl.'s Out-of-Time Motion  (filed July 2, 2014).  As such, Rockwell's motions were

filed 36 days out of time, and, indeed, *a full nine days after the actual Reserve Calendar deadline*

*itself had expired*.  Because Rockwell had no motion pending on June 23, 2014 (which was the

applicable Reserve Calendar deadline), the office of the clerk properly should have "enter[ed] . . .

order[s] of dismissal [in all 11 actions] without further direction from the court" on June 24, 2014,

in accordance with the express terms of USCIT Rule 83(c).  *See* USCIT R. 83(c).  Had the clerk's

office acted promptly in conformity with the court's rules, there would have been no pending actions

in which Rockwell could have filed the pending motions.

The extraordinary nature of the relief that Rockwell seeks stands in stark contrast to the bare-

bones papers that the company filed with the court on July 2, 2014.  *See* Pl.'s Out-of-Time Motion.

Incredibly, the motions that Rockwell filed in each of the 11 actions totals only slightly more than

a single page of text, excluding caption and signature block.  *Id.*[4]  Rockwell's motions do not even

cite (much less quote) USCIT Rule 6(b), the rule which governs extensions of time, both timely and

out-of-time.  *Id.*  Nor do the motions cite (much less brief) even a single judicial decision.  *Id.*;

*compare* Gadsden v. Jones Lang LaSalle Americas, 210 F. Supp. 2d 430, 436-37 (S.D.N.Y. 2002)

(refusing to find "excusable neglect" where movant's papers "contain[] no citations to legal

---

[4]Rockwell filed the exact same motion in each of the 11 actions at issue.

authority and do[] little but offer up a litany of unimpressive excuses" and are otherwise "short on substance").

Moreover, the motions that Rockwell filed on July 2, 2014 assert merely that "good cause exists" for granting the motions, notwithstanding the fact that – as set forth above – "good cause" is the standard applicable to a *timely* motion for an extension of time, and Rockwell's motions are patently *untimely*. *See* Pl.'s Out-of-Time Motion at 1; USCIT Rule 6(b)(1)(A). Rockwell's motions make no attempt to demonstrate "excusable neglect or circumstances beyond the control of the party," the much more stringent showing that is required for an out-of-time extension of time. *See* Pl.'s Out-of-Time Motion; USCIT Rule 6(b)(1)(B). *Compare* Wilkerson v. Jones, 211 F. Supp. 2d 856, 858 (E.D. Mich. 2002) (rejecting claim of "excusable neglect," where, *inter alia*, party "failed to argue that his failure to file timely . . . was due to excusable neglect," and instead "discusse[d] the more lenient (and irrelevant) standard" applicable to timely motions for extensions of time). This fact alone would have warranted denial of the motions, and the resulting dismissal of all 11 subject actions. *See*, *e.g.*, Krantz v. Nissan North America, Inc., 408 F. Supp. 2d 854, 861-62 (D. S.D. 2005) (rejecting out-of-time submission where "nothing is set forth in [the party's papers] which even claims excusable neglect. The words are not even used."; "No excusable neglect has been shown or even properly alleged."); Miller v. Bristol Compressors, Inc., 2005 WL 3263053 * 3 (W.D. Va. 2005) (rejecting claim of "excusable neglect" where counsel "failed to put forth any justification whatsoever . . . [concerning her] failure to file a timely response," and stated only that "she inadvertently failed (forgot) to file"); Wild v. Alster, 2005 WL 1458283 * 2 (D.D.C. 2005) (declining to find "excusable neglect" where party failed to explain reason for its late filing). It is

well-established that, in circumstances such as these, a plaintiff is not entitled to a second

opportunity to make its case.[5]

Not only were the motions that Rockwell filed on July 2, 2014 extraordinary in their lateness

and breath-taking in their brevity, they are exceptional in other respects as well.  Thus, for example,

although USCIT Rule 6(c) requires that any motion for an extension of time – *even a timely motion*

– set forth, *inter alia*, "the extent to which the time for the performance of the particular act has been

previously extended" (*i.e.*, the number of prior extensions), Rockwell's July 2, 2014 motions fail

to do so.  *See* Pl.'s Out-of-Time Motion.  Review of the docket reveals that – of the 22 motions to

extend the time to remain on the reserve calendar that Rockwell has filed in Court No. 05-00269

alone – an incredible *19 of those have been out-of-time* (*i.e.*, untimely) motions.  *See* Order to Show

Cause at 1; Docket Sheet in Court No. 05-00269.  Rockwell's motions do not even hint at these

---

[5]A movant for an out-of-time extension of time is required to state with particularity the grounds constituting "excusable neglect."  The mere assertion of "excusable neglect" – unsupported by facts – does not suffice.  *See generally* 1 Moore's Federal Practice § 6.06[3][a], pp. 6-33 to 6-43 (stating that out-of-time motion for extension of time "must include facts to support the assertion of excusable neglect," and that "[i]t is not enough merely to assert that excusable neglect caused the delay"); 4B Wright & Miller § 1165, pp. 532 n.13, 533 (explaining that movant is required to "allege the facts constituting excusable neglect," and that "the mere assertion of excusable neglect unsupported by facts has been held to be insufficient"); *see also, e.g.*, Quigley v. Rosenthal, 427 F.3d 1232, 1237-38 (10th Cir. 2005) (affirming denial of out-of-time motion where movant failed to allege facts necessary to support finding of "excusable neglect"); DeMint v. NationsBank Corp., 208 F.R.D. 639, 642-43 (M.D. Fla. 2002) (explaining that "the starting point and common denominator (indeed, the *sine qua non*) in every case employing an analysis of excusable neglect is an explanation of the reason for the delay"; refusing to find "excusable neglect" absent "a candid, straight-forward, and undisputed explanation . . . of the reason for the failure to comply with the pertinent deadline").

If – as indicated immediately above – the mere assertion of the *correct* standard (*i.e.*, "excusable neglect"), without supporting facts, is not sufficient, then it goes without saying that it was patently insufficient for Rockwell's July 2, 2014 motions to refer to the *incorrect* standard ("good cause") and to allege only the most skeletal facts relating to that standard.

facts.  Moreover, notwithstanding counsel's duty of candor to the court, in nine instances Rockwell failed to caption its out-of-time motions as such and further failed to otherwise indicate in any way in the text of its motions that they were out-of-time.  *See* Order to Show Cause at 1.  Similarly, notwithstanding counsel's duty of candor to the court, Rockwell's motions (including the July 2, 2014 motions) fail to indicate in any way Rockwell's long history of requesting *out-of-time* extensions of time in the 11 actions at issue.  *See* Order to Show Cause at 1; Pl.'s Out-of-Time Motion.[6]

In addition, two of the 11 subject actions *have been previously dismissed* – yet another disturbing and highly probative fact that Rockwell's motions failed to disclose.  *See* Order to Show Cause at 2; Order of Dismissal (Sept. 13, 2007), entered in Court No. 06-00054; Order of Dismissal (April 20, 2007) entered in Court No. 05-00269.  Rockwell's motions further failed to mention that, apparently, the filing of its July 2, 2014 motions (like the filing of most – if not all – of its prior out-of-time motions) was prompted only by a communication from the Office of the Clerk, which alerted Rockwell to the impending dismissal of the subject actions.  *See* Order to Show Cause at 2; Pl.'s Supp. Brief at 12-13 (in a remarkably candid, albeit belated, admission, stating that – in "[m]any" instances in which Rockwell has filed out-of-time motions – "the Clerk even issued a reminder to counsel that the Reserve Calendar deadline had passed, and invited counsel to move out of time to extend the deadline before it dismissed the case for failure to prosecute").

_____

[6]In its most recent submission, Rockwell represents that it has surveyed the dockets of all 11 cases at issue here.  According to Rockwell, in none of the 11 cases has fewer than five out-of-time motions been filed.  *See* Pl.'s Supp. Brief at 1.  And, in fact, according to Rockwell, all five of the motions for extensions of time filed in Court No. 12-00001 have been out-of-time.  Each and every one.  *Id.*

Finally, in the motions that Rockwell filed on July 2, 2014, Rockwell refers carelessly to "reinstate[ment] [of] the above-captioned [11] cases to the Reserve Calendar" and elsewhere requests that the court "reinstate these cases to the Reserve Calendar," thus indicating (incorrectly) that the subject actions already have been dismissed. Pl.'s Out-of-Time Motion at 1. In short, even as Rockwell prepared and filed the pending out-of-time motions in the 11 actions at issue, Rockwell was oblivious to the then-current status of those actions. *See* Order to Show Cause at 2.

### III. <u>Order to Show Cause</u>

As explained above, because Rockwell had no motions for extensions of time (out-of-time, or otherwise) pending on June 23, 2014 (the applicable Reserve Calendar deadline), the clerk properly should have "enter[ed] . . . order[s] of dismissal [in all 11 actions] without further direction from the court" on June 24, 2014, in accordance with the express terms of USCIT Rule 83(c). *See* USCIT R. 83(c). Had the clerk acted in conformity with the court's rules, there would have been no pending actions in which Rockwell could have filed its motions. Moreover, as detailed above, the out-of-time motions for extensions of time to remain on the Reserve Calendar that Rockwell filed on July 2, 2014 were, in every respect, wholly inadequate. As such, denial of the motions was the clear course of action, with the resulting dismissal of all 11 subject actions. Nothing in the law entitles a plaintiff to "a second bite at the apple," particularly in circumstances as egregious as those presented here. Nevertheless, an Order to Show Cause issued, according Rockwell a final opportunity to "show cause why . . . the pending Motion[s] [for out-of-time extensions of time] should not be denied and the subject actions dismissed with prejudice." *See* Order to Show Cause at 4.

The Order to Show Cause generally summarized the history of the 11 actions at issue, emphasizing in particular Rockwell's pattern of filing out-of-time motions for extensions of time to allow the cases to remain on the Reserve Calendar.  *See generally* Order to Show Cause at 1-2. The Order to Show Cause also critiqued both the form and the substantive merits of the out-of-time motions that Rockwell filed on July 2, 2014.  *See generally id*.  And, in addition, the Order to Show Cause highlighted – for the benefit of Rockwell – numerous salient points of law concerning the "excusable neglect" standard applicable to out-of-time motions.  *See generally* Order to Show Cause at 3.

Thus, for example, the Order to Show Cause explained that "excusable neglect or circumstances beyond [its] control" generally does not include a party's "carelessness and laxity," or "inadvertence," or "unfamiliarity with the Rules."  1 Moore's Federal Practice § 6.06[3][c], pp. 6-45 to 6-46; Order to Show Cause at 3; *see also*, *e.g.*, <u>Pioneer</u>, 507 U.S. at 392 (stating that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect").  The Order to Show Cause similarly noted that, while the Government's consent to the out-of-time motions for extensions of time (interpreted as evidence of lack of prejudice) might well be relevant in determining the existence of "excusable neglect," such consent is by no means determinative of the existence of "excusable neglect," and there is ample authority for the position that the most important factor is the reason for the untimely motion and whether the delay was within the reasonable control of the movant – a proposition that Rockwell itself now acknowledges.  *See* Order to Show Cause at 3[7]; Pl.'s Supp. Brief at 11-12 (stating that "the most

---

[7]The Order to Show Cause surveyed some of the leading caselaw on point.  *See*, *e.g.*, <u>Dimmit v. Ockenfels</u>, 407 F.3d 21, 24 (1st Cir. 2005) (emphasizing that, in evaluating claim of "excusable

important consideration in whether to grant leave to file out of time is the reason for the delay in

filing").  In addition, the Order to Show Cause noted that "it is well-settled that the mere fact that

denial of [Rockwell's] pending Motion[s] (and the resulting dismissal of all subject actions) would

penalize [Rockwell] for the actions of its counsel is of relatively little moment."  *See* Order to Show

Cause at 3.[8]  As the Supreme Court explained in <u>Pioneer,</u> in circumstances such as these, it is

entirely appropriate to visit the sins of counsel on the client.  *See* <u>Pioneer,</u> 507 U.S. at 396-97

---

neglect," "by far the most critical [factor] is the asserted reason" for the failure to timely file);
<u>Silivanch,</u> 333 F.3d at 366 & n.7 (explaining that, "despite the flexibility of 'excusable neglect' and
the existence of the four-factor test [for determining 'excusable neglect'] . . . , we and other circuits
have focused on the third factor: 'the reason for the delay, including whether it was within the
reasonable control of the movant'") (citation omitted); <u>Lowry v. McDonnell Douglas Corp.,</u> 211
F.3d 457, 463 (8th Cir. 2000) (stating that "[t]he four . . . factors do not carry equal weight: the
excuse given for the late filing must have the greatest import . . . . [T]he reason-for-delay factor will
always be critical to the inquiry. . . . . [A]t the end of the day, the focus must be upon the nature of
the neglect."); <u>Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc.,</u> 270 F.3d
1, 5-6 (1st Cir. 2001) (same); <u>Hospital del Maestro v. Nat'l Labor Relations Board,</u> 263 F.3d 173,
175 (1st Cir. 2001) (*per curiam*) (same); <u>Hilterman v. Furlong,</u> 1998 WL 637264 * 2 (10th Cir.
1998) (explaining that "[f]ault in the delay is a 'very important factor – perhaps the most important
single factor – in determining whether neglect is excusable'") (quoting <u>City of Chanute v. Williams
Natural Gas Co.,</u> 31 F.3d 1041, 1046 (10th Cir. 1994)); <u>Wilson v. Prudential Financial,</u> 218 F.R.D.
1, 3 (D.D.C. 2003) (explaining that "the key factor" in determining "excusable neglect" is "the
reason for the delay, including whether it was within the reasonable control of the movant," and
observing that "Courts have noted that 'fault in the delay [is] perhaps the most important single
factor,' while the prejudice factor [*i.e.*, whether the untimeliness prejudiced the other party] is of
relatively little importance.") (citation omitted).

        [8]As authority for this point, the Order to Show Cause directed Rockwell to two well-known,
representative cases, <u>Lastra</u> and <u>Link</u>.  *See* <u>Lastra v. Weil, Gotshal & Manges, LLP,</u> 2005 WL
551996 (S.D.N.Y. 2005) (explaining that, "[a]bsent extraordinary circumstances, a client assumes
the risk of his attorney's actions and is bound even by the consequences of his negligence," and
noting that circumstances such as those present in the 11 cases at bar "may give rise to a claim for
malpractice [against the attorney], but do[] not constitute . . . excusable neglect"); <u>Link v. Wabash
R.R. Co.,</u> 370 U.S. 626, 633-34 (1962) (affirming trial court's dismissal of action based on counsel's
failure to prosecute, and rejecting notion that dismissal unjustly penalizes client, explaining that
client "voluntarily chose this attorney as his representative in the action, and he cannot now avoid
the consequences of the acts or omissions of this freely selected agent").

(stating that "clients must be held accountable for the acts and omissions of their attorneys").

The Order to Show Cause concluded by directing Rockwell "to review and remedy (as necessary) its calendaring systems to ensure that no further deadlines are missed in this or any other action, particularly in light of [the company's] long history of repeated out-of-time filings and the potentially very grave consequences associated with an untimely filing." Order to Show Cause at 3. The Order to Show Cause further authorized Rockwell to supplement its pending motions, directing that Rockwell's supplemental brief, *inter alia*, "cite the Court rule and the standard applicable to out-of-time motions for extensions of time and . . . fully brief in detail and *in a balanced fashion* (*i.e.*, without cherry-picking the cases cited or attempting to minimize adverse caselaw by drawing frivolous or largely meaningless distinctions) the relevant facts and law (with ample citations to Moore's Federal Practice and Wright & Miller, as well as to caselaw . . . .)." *Id.* at 4.[9]

---

[9]The Order to Show Cause directed Rockwell that its research "[should] not be limited to the decisions of this Court and the Court of Appeals for the Federal Circuit," in light of the fact that the "excusable neglect" standard in this court parallels the standard in the Federal Rules of Civil Procedure, and in light of the relative paucity of relevant decisions in the jurisprudence of this Court and the Court of Appeals for the Federal Circuit, as well as the fact that some of that caselaw is difficult to reconcile with the great weight of the authority elsewhere across the country. Order to Show Cause at 4; *see also*, *e.g.*, Former Employees of Tyco Elecs. v. U.S. Dep't of Labor, 27 CIT 380, 382-84, 259 F. Supp. 2d 1246, 1249-50 (2003) (conflating analysis and thus granting *out-of-time* motion for extension of time based on conclusion that movant/defendant agency's resource constraints warranted granting extension of time for filing of remand results, without any rigorous analysis of the reason, if any, for defendant/movant's failure to seek *timely* extension of time for filing of remand results – *i.e.*, failing to analyze (in the words of Pioneer) "the reason for the delay [in filing motion for extension of time], including whether [the delay] was within the reasonable control of the movant") (cited in Pl.'s Supp. Brief at 11, 16).

## IV.  Rockwell's Response to the Order to Show Cause

In its most recent submissions, counsel for Rockwell assures the court that it "has initiated a review of its calendaring system to ensure that no further deadlines are missed" and affirms that counsel is aware that, in the future, Rockwell will be held to the letter of the rules of the court.  *See* Pl.'s Supp. Brief at 3-4.

Rockwell also devotes an inordinate amount of ink to a detailed overview of the Reserve Calendar process, as well as an extended discussion of Rockwell's counsel for Rockwell's "management of the Reserve Calendar" and the parties' "behind the scenes" efforts to amicably resolve the subject cases.  *See generally*, *e.g.*, Pl.'s Supp. Brief at 2-9.  The purpose of these sections of Rockwell's papers apparently is to make it clear that "the continued presence of a case on a [Reserve Calendar], and the need to extend its presence on that calendar, is not indicative of inaction or lack of diligence in processing or prosecuting the cases."  *Id*. at 8-9.

It may well be that "[Rockwell's] attorneys have spent hundreds of hours working on the processing of SBTR cases" and that "Government counsel have done the same."  Pl.'s Supp. Brief at 9.  But the fact nonetheless remains that Rockwell's counsel failed – both in the specific instances at bar, and repeatedly, again and again, in the past – to spend the very modest amount of time that the court's rules obligated them to spend in order to file routine, *timely* motions for extensions of time, to permit the actions at issue to remain on the Reserve Calendar.

The issue presented here is not whether Rockwell is diligently pursuing resolution of the 11 subject actions and thus would be entitled to extensions of time that were *timely* sought.  Instead, the issue presented here is whether Rockwell has any legitimate basis to excuse its failure to seek

such timely extensions of time.  Rockwell's extended discussion of the Reserve Calendar process and the efforts that counsel have expended on the substantive merits of these actions simply have no significant bearing on that issue.

In its most recent submissions, Rockwell also addresses the four factors that the Supreme Court specifically identified in <u>Pioneer</u> as among the "relevant circumstances" to be considered in determining the existence of "excusable neglect."  *See* <u>Pioneer</u>, 507 U.S. at 395; Pl.'s Supp. Brief at 11-18.[10]  Rockwell frames the four factors as:  (1) "Prejudice to the Defendant"; (2) "Impact on

---

[10]Rockwell was expressly instructed that its amended/supplemental briefs should include, *inter alia*, "ample citations to Moore's Federal Practice and Wright & Miller, as well as to caselaw, which shall not be limited to the decisions of this Court and the Court of Appeals for the Federal Circuit."  Order to Show Cause at 4.  Rockwell paid little heed.

Rockwell's most recent submissions cite to only one section of Wright & Miller and to two sections of Moore's Federal Practice – not "ample," by any measure.  *See* Pl.'s Supp. Brief at 10, 12, 16.  Moreover, one would have thought it superfluous to instruct Rockwell that citations should be to the most current editions of those authorities; but it seems that nothing can be taken for granted here.  Inexplicably, Rockwell cites to Wright & Miller "(2d ed. 1987)" and Moore's "(2d ed. 1988)."  *See* Pl.'s Supp. Brief at iii (Table of Authorities), 10.  Rockwell thus has chosen to cite and rely on authorities that are hopelessly out-of-date (*by more than two decades*), pre-dating even the Supreme Court's now longstanding ruling in <u>Pioneer</u>, which Rockwell itself recognizes as having redefined the pre-existing landscape of the law on "excusable neglect."  *See id.* at 9-10 (identifying <u>Pioneer</u> as the now-"authoritative guidance" on "excusable neglect," and explaining that decision addressed pre-existing split in the circuits).  Further, Rockwell's second citation to Moore's Federal Practice – *i.e.*, "2 Moore's Federal Practice [§] 6.08" – is for a proposition that is at best peripheral to the "excusable neglect" analysis here.  *See* Pl.'s Supp. Brief at 12 (citing referenced section of Moore's for proposition that "ordinarily the granting or withholding of an extension of time is within the court's discretion").  Elsewhere, it is similarly unclear from Rockwell's papers why the referenced provisions of Moore's and Wright & Miller are cited.  *See id.* at 16.  The combination of Rockwell's reliance on out-dated authorities that are no longer readily accessible to a reader, together with Rockwell's broad, imprecise citations (lacking pinpoint references to specific subsections or page numbers), and Rockwell's failure to provide parenthetical explanations to summarize the purpose and/or substance of the citations renders those citations useless.  *See id.* (citing "4A Federal Practice and Procedure § 1165; 2 Moore's Federal Practice [§] 6.08," absent any further specificity or parentheticals).

the Court"; (3) "Reason for the Delay in Filing"; and (4) "Good Faith." *See generally* Pl.'s Supp.

Brief at 11-18. As summarized below (and as is typical of movants in "excusable neglect" cases),

Rockwell's motions (as amended) demonstrate that its delay has not prejudiced the Government.

In addition, in its amended motions, Rockwell makes a reasonable (although not clearly compelling)

---

Rockwell's research, analysis, and briefing of the caselaw are equally unimpressive. Of the 34 cases listed in the Table of Authorities filed with its most recent submissions, only 23 are even arguably relevant to the "excusable neglect" issue – and that figure includes cases that Rockwell cites for very general, basic propositions, as well as cases that Rockwell cites on ancillary issues such as counsel's unwavering obligation to monitor the status of cases and other similar matters. *See* Pl.'s Supp. Brief at i-ii (Table of Authorities) (The other 11 cases that Rockwell cites are proceedings in the lead <u>Rockwell</u> case and related litigation, and cases cited in Rockwell's extended, but irrelevant, discussion of the history and purpose of the Reserve Calendar. *See generally* Pl.'s Supp. Brief at 3-9.) The extent of Rockwell's legal research thus bears little relationship to the high stakes here and suggests that, even now, Rockwell and its counsel fail to appreciate the gravity of their situation. That impression is only reinforced by the remarkable fact that *a mere two* of the 23 referenced cases date from the new millennium. *See* <u>Former Employees of Tyco</u>, 27 CIT 380, 259 F. Supp. 2d 1246 (2003) (cited in Pl.'s Supp. Brief at 11, 16); <u>Hilton Groups, PLC v. Branch Banking & Trust Co.</u>, 2007 WL 2022183 * 4 (D.S.C. 2007) (cited in Pl.'s Supp. Brief at 13-14). As with its citations to Wright & Miller and Moore's, so too with its citations to caselaw – Rockwell's legal analysis is seriously out-dated, and ignores a vast (and growing) body of relevant authority.

It appears that Rockwell actually did relatively little, if any, independent legal research, and largely confined itself to a handful of cases with which it apparently began and the decisions that were cited in those cases. The result of this methodology is not only that the caselaw cited is all relatively old, but, in addition, it is skewed, because, *inter alia*, decisions that reach a particular outcome or approach an issue in a particular way are more likely to rely on other decisions that do the same (and are less likely to cite and discuss decisions that reach the opposite outcome or approach an issue differently). This fact further undermines the soundness of Rockwell's research and briefing and limits its utility for the court.

Finally, as discussed above, Rockwell was specifically instructed not to limit its research solely "to the decisions of this Court and the Court of Appeals for the Federal Circuit." Order to Show Cause at 4; *see also* n.9, *supra*. However, only 11 of the 23 referenced decisions (including <u>Pioneer</u>) were from other courts; and five of those 11 cases were cited as part of Rockwell's misguided attempt to blame the office of the clerk of the court for Rockwell's failure to seek timely extensions of time in the 11 actions at issue. *See* Pl.'s Supp. Brief at 13-14; *see also* section IV.C, *infra*.

showing on the length of the delay and the impact of that delay on judicial proceedings and judicial

administration.  The two remaining <u>Pioneer</u> factors weigh very heavily against Rockwell, however.

Rockwell's case on the most important of the four factors – *i.e.*, the reason for Rockwell's delay

(including whether the reason for the delay was within its control) – is wholly lacking in merit.  And,

finally, these 11 cases are among those rare "excusable neglect" cases where the movant cannot

credibly claim that it has acted in good faith.

Rockwell's showing as to each of the four <u>Pioneer</u> factors is analyzed below, in turn.

A.  <u>Prejudice to the Defendant</u>

Rockwell asserts broadly that "[n]o harm will befall the [Government]" if the company's

pending out-of-time motions for extensions of time to permit the 11 subject actions to remain on the

Reserve Calendar are granted.  *See generally* Pl.'s Supp. Brief at 15-16.  It is true that the

Government gave its consent to the motions that Rockwell filed on July 2, 2014 (as well as to all

prior extensions of time, including all motions for leave to file out-of-time).  *See id.* at 15; Pl.'s Out-

of-Time Motion at 2.  And, more recently, the Government has advised that – although it

"understand[s] the concerns expressed" in the Order to Show Cause and "defer[s] to the Court's

discretion" as to whether to grant the extraordinary relief that Rockwell seeks – the Government

"would not be prejudiced" if the 11 actions at issue were to remain on the Reserve Calendar.  *See*

Def.'s Response Brief at 1.[11]  "In fact," the Government states, "keeping the subject cases on the

---

[11]Because the Government is charged with, *inter alia*, protecting the public fisc and yet is here taking the position that granting the relief that Rockwell seeks will work no prejudice on the Government or the public, the Government presumably has determined that the statutes of limitations have not expired in the 11 actions at issue *and* that – if the pending out-of-time motions

reserve calendar would provide the parties with an efficient means to [dispose] of these actions

without further litigation," to the extent that the merchandise and issues presented in the actions are

"substantially the same as those covered by the test case, <u>Rockwell Automation, Inc. v. United

States</u>, 31 CIT 692 (2007)." *See id*. at 1-2.

As other courts have observed, this factor (*i.e.*, the risk of prejudice to the non-moving

party/parties), and two of the other three <u>Pioneer</u> factors, typically "weigh in favor of the party

seeking the [out-of-time] extension." <u>Silivanch</u>, 333 F.3d at 366. At least as to the factor of

prejudice to the non-moving party, this case is no different.

### B.  Impact on the Court

The Supreme Court in <u>Pioneer</u> identified "the length of the [movant's] delay" and the

"potential impact [of the delay] on judicial proceedings" and "efficient judicial administration" as

another factor to be considered in evaluating claims of "excusable neglect." <u>Pioneer</u>, 507 U.S. at

395, 398.

---

were denied and the 11 actions were dismissed pursuant to USCIT Rule 83(c) – Rockwell otherwise likely would be able to reinstate or re-file each of those actions. However, that might not be a foregone conclusion, particularly in light of Rockwell's extreme record of neglect in maintaining the 11 actions on the Reserve Calendar, as well as the fact that two of the 11 actions already have been dismissed once before. *See, e.g.*, n.21, *infra* (citing select decisions where court has denied plaintiffs' motions for relief from automatic orders of dismissal entered by clerk's office dismissing actions on Reserve Calendar for lack of prosecution pursuant to USCIT Rule 83(c)).

For purposes of the pending motions, the Government's representations as to lack of prejudice are being accepted at face value. However, no party should assume that the Government will not be expected to detail the basis for its position in similar cases in the future, particularly if the Government contends that granting an out-of-time extension of time will not prejudice the public fisc, where  – as here – denying the out-of-time extension of time would result in the automatic dismissal of a plaintiff's action pursuant to USCIT Rule 83(c).

Rockwell here is silent on the length of the delay, a consideration to which courts typically accord relatively little weight, because (for a variety of reasons) the length of the delay in most cases is minimal, both in absolute and relative terms.[12]  In the 11 cases here at bar, however, the length of the delay is (at least relatively speaking) significant.  In these 11 cases, not only did Rockwell fail to seek timely extensions of time, but, in fact, Rockwell delayed action for so long (*i.e.*, 36 days) that the Reserve Calendar deadline itself expired, and – *by court rule* – all 11 cases should have been automatically dismissed by the Office of the Clerk more than a week before Rockwell's out-of-time motions were filed.  *See* USCIT Rule 83(c).

In one oft-cited case, the First Circuit sustained a finding of "no excusable neglect" even though "the delay in [the] case was *only one day* and . . . there was little danger of prejudice to the other party," the delay did not negatively impact the proceedings, and the movant acted in good faith, where the reason for the delay was weak.  *See* Hospital del Maestro v. Nat'l Labor Relations Board, 263 F.3d 173, 175 (1st Cir. 2001) (*per curiam*) (emphasis added).[13]  Here, although the length of the delay (like the other remaining factors) is of relatively little significance compared to the primary factor (*i.e.*, the reason for the delay, discussed below), the length of the delay is nonetheless

---

[12]*See, e.g.*, Silivanch, 333 F.3d at 366 (explaining that, "[i]n the typical case, the first two Pioneer factors [*i.e.*, length of delay and prejudice to the non-movant] will favor the moving party: '[D]elay always will be minimal in actual if not relative terms, and the prejudice to the non-movant will often be negligible . . . . And rarely in the decided cases is the absence of good faith at issue").

[13]To be sure, there are numerous cases where courts have refused to find "excusable neglect," even though the delay was but a single day.  *See also, e.g.*, Graphic Communications Int'l Union, 270 F.3d at 7-8 (sustaining finding of "no excusable neglect," even though "there would be 'little danger of prejudice' to [the non-movant] if the court granted the motion for extra time; . . . '*the length of the delay was minimal* (*one day*), and . . . would not have a serious impact on judicial proceedings'; and . . . there was no evidence the [movants] had acted in bad faith") (emphasis added).

a consideration that arguably could weigh – at least to some modest extent – against granting the relief that Rockwell seeks.  If nothing else, the rules of the court (and Rule 83(c) in particular) reflect the considered expert judgment of the drafters that actions such as the 11 at issue here – *i.e.*, actions where the Reserve Calendar deadline itself has been allowed to lapse – should be dismissed, and the chips allowed to fall where they may.

As to the broader, related issue of the impact of Rockwell's untimeliness on "judicial proceedings," Rockwell asserts that granting the pending motions would not "interfere with the efficiency of judicial administration."  Pl.'s Supp. Brief at 16.  Rockwell emphasizes that the effect of granting the pending motions would be "to extend the Reserve Calendar deadline, which by definition requires the most minimal amount of judicial supervision" in that it "serv[es] only to preserve the Court's subject-matter jurisdiction over denied administrative protests."  *Id*.  Rockwell reasons that "granting leave to file out of time will reduce the need to expend judicial resources, whether they be to prosecute these cases, or to appeal or move to reconsider a dismissal of the cases for failure to prosecute."  *Id*.  Rockwell further claims that denying the pending motions would work an injustice on Rockwell and the Government, by denying them "the opportunity to settle these cases amicably, at this late stage in the broader litigation and after the [parties have] expended time and effort – not to mention the Court's resources in adjudicating Rockwell I."  *Id*. at 16-17.

Rockwell's claims of its diligence in the prosecution of the instant actions and Rockwell's impassioned protestations about the prospect of potential injustice have a rather hollow ring given Rockwell's unwillingness to invest the very modest resources necessary to take the timely action required to maintain the actions on the Reserve Calendar.  Still, Rockwell's analysis of this factor is generally sound – at least as far as it goes.  The interest that is typically the focus of this factor is

any potential negative effects of a movant's tardiness vis-a-vis ongoing judicial proceedings.  By

definition, in the context of the Reserve Calendar – where no such judicial proceedings are ongoing

– there can be no such potential negative effects.  There are, however, other judicial administration

interests at stake.

First, there are the judicial resources that have been consumed in the past, and continue to

be consumed, by Rockwell's longstanding pattern and practice of filing out-of-time motions for

extensions of time to remain on the Reserve Calendar.  Contrary to Rockwell's assertions (*see* Pl.'s

Supp. Brief at 3, 12),[14] it is not true that all consent motions for extensions of time in Reserve

Calendar cases are disposed of by clerk's office staff, such that judicial resources are spared.

As the records in these 11 actions reflect, contrary to Rockwell's claims, the court's standard

practice is that the clerk's office refers all out-of-time motions for extensions of time to a judge for

disposition.  *See*, *e.g.*, Order (April 1, 2014) (Eaton, J.) (granting Rockwell out-of-time motion for

extension of time), entered in Court No. 05-00269; Order (Sept. 26, 2013) (Carman, J.) (same),

entered in Court No. 05-00269.[15]  Moreover, out-of-time motions for extensions of time are properly

---

[14]Rockwell erroneously asserts that each and every one of the consent motions for extensions of time to remain on the Reserve Calendar that has been granted in the 11 cases at issue – including both timely-filed motions and out-of-time motions – "were granted by the Clerk without judicial intervention."  Pl.'s Supp. Brief at 3; *see also id*. at 12 (asserting that, in one of the 11 subject actions, "[t]his . . . is the twentieth time that [Rockwell] has moved out of time to extend the Reserve Calendar deadline, and in each and every case the Clerk has granted leave, without any intervention by the Court itself").

[15]*See also*, *e.g.*, Order (Sept. 28, 2012) (Musgrave, J.) (granting Rockwell out-of-time motion for extension of time), entered in Court No. 05-00269; Order (June 27, 2012) (Stanceu, J.) (same), entered in Court No. 05-00269; Order (March 29, 2012) (Eaton, J.) (same), entered in Court No. 05-00269; Order (Oct. 5, 2011) (Pogue, J.) (same), entered in Court No. 05-00269; Order (April 26, 2007) (Wallach, J.) (granting Rockwell motion to restore action to Reserve Calendar), entered in Court No. 05-00269.

subject to much more stringent standards than are timely motions, and out-of-time motions require significantly greater analysis and deliberation.

Nor is "judge time" the only judicial administration resource that Rockwell continues to tax heavily.  Rockwell apparently also is placing demands on the staff of the clerk's office as well.  For example, to the extent that Rockwell's motions for extensions of time are not referred to judges, they are disposed of by the clerk's office staff.  More importantly, Rockwell's most recent submissions make it clear that the clerk's office staff is expending precious time tracking Rockwell's Reserve Calendar cases and alerting Rockwell to case deadlines – a questionable role for the clerk's office staff to play, and an inappropriate drain on the resources of the court.  *See* Pl.'s Supp. Brief at 12-13 (stating that, in one of the 11 cases at issue, where Rockwell has sought 20 out-of-time extensions of time, "[m]any of those times, the Clerk even issued a reminder to counsel that the Reserve Calendar deadline had passed, and invited counsel to move out of time to extend the deadline before it dismissed the case for failure to prosecute").

The long and the short of it is that any claim by Rockwell that judicial resources are being conserved by maintaining these 11 actions on the Reserve Calendar must be weighed carefully against other considerations, including, *inter alia*, the judicial and other court resources consumed by Rockwell's history of repeatedly filing out-of-time motions for extensions of time to maintain the 11 actions on the Reserve Calendar.  As a result, it is a close call; but, on balance, this factor tips slightly in Rockwell's favor.

---

On occasion, when a litigant fails to caption an out-of-time motion as such, that motion may not be referred to a judge and may instead be disposed of by the clerk's office staff.

## C.  The Reason for the Delay in Filing

Under Pioneer, a critical (and in many, if not most, cases, decisive) consideration in ruling on an out-of-time motion for an extension of time is "the reason for the delay, *including whether it* [*i.e.*, *the delay*] *was within the reasonable control of the movant*."  Pioneer, 507 U.S. at 395 (emphasis added).  Indeed, as Rockwell has acknowledged, the weight of the authority nationwide holds that this factor is the single most important consideration in determining whether, in fact, neglect is "excusable."  *See* Pl.'s Supp. Brief at 11-12 (noting that "the most important consideration in whether to grant leave to file out of time is the reason for the delay in filing"); *see also* n.7, *supra* (summarizing select leading cases concerning the primacy, among the four Pioneer factors, of "the reason for the [movant's] delay, including whether [the delay] was within the reasonable control of the movant," in evaluating claims of "excusable neglect").

According to Rockwell, its failure to file timely motions for extensions of time in the 11 actions here "reasonably resulted from events both practical and circumstantial." Pl.'s Supp. Brief at 12; *see generally id*. at 11-15.  In an unseemly display of chutzpah, Rockwell lays the bulk of the blame for its failure to file timely motions for extensions of time at the feet of the staff of the Clerk of the Court.  *See id*. at 12-14.  Rockwell argues that "Reserve Calendar practice can, and usually does, take place entirely outside of the oversight of a judge," and argues that "[t]his . . . is the twentieth time [in one of the 11 actions] that [Rockwell] has moved out of time to extend the Reserve Calendar deadline, and in each and every case the Clerk has granted leave, without any intervention by the Court."  *Id*. at 12.[16]  To drive home its point, Rockwell emphasizes that, "[m]any

_____

[16]As discussed above, there is no truth to Rockwell's claim that the clerk's office disposes of all motions for extensions of time (both timely and untimely) in all Reserve Calendar cases.  *See*

of those times, the Clerk even issued a reminder to counsel that the Reserve Calendar deadline had

passed, and invited counsel to move out of time to extend the deadline before it [*i.e.*, the Clerk's

Office] dismissed the case for failure to prosecute." *Id.* at 12-13.  This argument is specious at best.

Even as Rockwell points its finger at the Office of the Clerk, Rockwell concedes that it is

not permitted to "rely . . . on reminders from the Clerk's office to meet court deadlines," that it alone

bears "responsib[ility] for meeting litigation deadlines," and that it understands that the fault here

lies solely with Rockwell and its counsel.  *See* Pl.'s Supp. Brief at 13.  Rockwell acknowledges that

"[a]n attorney has a responsibility to monitor proceedings with some degree of diligence."  Prior

Prods., Inc. v. Southwest Wheel-NCL Co., 805 F.2d 543, 546 (5th Cir. 1986) (quoted in Pl.'s Supp.

Brief at 13).[17]  And Rockwell admits that "a party plaintiff has a primary and independent obligation

---

n.15, *supra* (and accompanying text).  Thus, to the extent that Rockwell seeks to deflect responsibility away from itself by pointing to the clerk's office, Rockwell actually seeks to blame not only the clerk's office but also the judges of the court – or, at a minimum, those judges who have granted Rockwell's many out-of-time motions for extensions of time in the past.

[17]Rockwell omits the next sentence from the decision that it quotes, Prior Products: "Failure to comply with scheduled time targets as a result of inadequate monitoring [by counsel] will only be excused when justified by *something more than alleged neglect on the part of the clerk* [*of the court*]."  Prior Prods., 805 F.2d at 546 (emphasis added).

*See also*, *e.g.*, Washington Int'l Ins. Co. v. United States, 16 CIT 480, 482-83, 793 F. Supp. 1091, 1093 (1992) (denying plaintiff's motion for relief from automatic order of dismissal entered by clerk's office dismissing action on Joined Issue Calendar for failure to prosecute, stating that "[an] attorney must exercise diligent efforts in monitoring proceedings in an action" and "*may not shift that burden to the court by relying upon a notice from the court*") (emphasis added); Wang Labs., Inc. v. United States, 16 CIT 468, 471-73, 793 F. Supp. 1086, 1089-90 (1992) (denying plaintiff's motion for relief from automatic order of dismissal entered by clerk's office dismissing action on Reserve Calendar for lack of prosecution, holding, *inter alia*, that "it is counsel's responsibility to exercise diligent efforts in monitoring and ascertaining the status of an action" and that "[*c*]*ounsel may not shift its burden to the court*, by seeking to excuse a failure to inquire about the status of a consent motion that had been pending for over six months") (emphasis added).

to prosecute any action brought by it – from the moment of commencement to the moment of final

resolution.  That primary responsibility never shifts to anyone else and entails the timely taking of

all steps necessary for its fulfillment."  Caterpillar Inc. v. United States, 22 CIT 1169, 1170 (1998)

(quoting Avanti Prods., Inc. v. United States, 16 CIT 453, 453-54 (1992)) (quoted in Pl.'s Supp.

Brief at 13).  Further, the court has squarely held that counsel is charged with knowledge of the

deadline for removal of cases from the Reserve Calendar and the risk of automatic dismissal for

failure to prosecute pursuant to USCIT Rule 83(c), whether or not counsel receives any courtesy

reminder notice from the office of the clerk.  *See*, *e.g.*, Washington Int'l Ins. Co. v. United States,

16 CIT 480, 481 & n.1, 793 F. Supp. 1091, 1092 & n.1 (1992).  It is black letter law that "[c]ounsel

may not shift that burden [of monitoring the status of counsel's cases] by relying upon a notice from

the court."  *Id.*, 16 CIT at 482, 793 F. Supp. at 1093.

Yet Rockwell here seeks to rely on a select handful of cases in an effort to argue that its

neglect was "excusable," because – according to Rockwell – it assertedly "has been misled by action

of the court or its officers," because it "in good faith relied on the actions and representations of the

. . . court or its officers," and because it "was lulled into the false sense of security that [it] could

delay filing . . . until after the time prescribed by the applicable rules."  *See* Pl.'s Supp. Brief at 13-

14 (citing and/or quoting Redfield v. Cont'l Casualty Corp., 818 F.2d 596, 602 (7th Cir. 1987);

Mennen Co. v. Gillette Co., 719 F.2d 568, 570 (2d Cir. 1983); Hernandez-Rivera v. INS, 630 F.2d

1352, 1355 (9th Cir. 1980); Hilton Groups, PLC v. Branch Banking & Trust Co., 2007 WL 2022183

* 4 (D.S.C. 2007); Farthing v. City of Shawnee, 1994 WL 68715 * 1-*2 (D. Kan. 1994)).[18]

_____

[18]*See generally* E.I. DuPont de Nemours & Co. v. United States, 22 CIT 601, 602-03 & n.4,
15 F. Supp. 2d 859, 861-62 & n.4 (1998) (discussing and distinguishing, *inter alia*, Redfield and

Suffice it to say that none of the cases cited by Rockwell even remotely parallels the facts of this case.[19]  Rockwell does not claim, for example, that there was some sort of *ambiguity* in the court rules governing the deadline for filing timely motions for extensions of time and that it relied on the representations of one particular member of the staff of office of the clerk of the court for clarification that ultimately turned out to be in error.[20]  Similarly, Rockwell does not claim that some

_____

Farthing).

    [19]Virtually all "excusable neglect" cases involve discrete, "one-off" events, which result in a party missing one specific deadline.  A wide-ranging survey of the caselaw has identified no "excusable neglect" case with facts that are anywhere close to the facts of this case and counsel's history of repeatedly flouting clear, established court rules and orders.

    [20]It is worth noting that – even assuming that Rockwell could claim reliance on specific advice from the office of the clerk – it is unlikely in the extreme that Rockwell would prevail, given the crystal clarity of the applicable rules.  *See*, *e.g.*, Kraft, Inc. v. United States, 85 F.3d 602, 609 (Fed. Cir. 1996) (rejecting counsel's claim that "its failure to file a timely notice of appeal can be blamed on the clerk's office," where alleged misstatement by clerk's office conflicted with clear language of court rule, and "[a] simple reading of [the applicable rule] by experienced counsel would have made it readily apparent" that any such statement by clerk's office was incorrect); DuPont, 22 CIT at 602-03 & n.4, 15 F. Supp. 2d at 861-62 & n.4 (rejecting claim that counsel's reliance on erroneous advice of office of clerk of the court constituted "excusable neglect," where "[c]ounsel could have researched the law" and "the Federal Rules and case law interpreting the rules are clear"); *see also* Mirpuri v. ACT Manufacturing, Inc., 212 F.3d 624, 629-31 (1st Cir. 2000) (rejecting claim that counsel's reliance on incorrect information concerning case status provided by court clerk's office constituted "excusable neglect," where counsel "could have discovered [the answer] simply by checking the docket"; "The plaintiffs' reliance on a telephonic inquiry, in lieu of checking the docket, constituted neglect – but not excusable neglect."); *cf*. Kapral v. United States, 166 F.3d 565, 568 n.1 (3d Cir. 1999) (refusing to find that counsel reasonably relied on misinformation provided by court clerk's office where "[t]he record reflects that . . . counsel is an experienced practitioner who should have known or verified the elementary rules that govern the filing of [the motion at issue]").

    Because Rockwell's claim that it was misled by the actions of the clerk's office is so patently lacking in merit, there is no need to further dissect that argument.  It is nevertheless worth noting that – in general – parties rarely succeed in arguing that they were entitled to rely on statements (much less actions, or failures to act) of personnel in a court clerk's office.  *See*, *e.g.*, Osterneck v. Ernst & Whinney, 489 U.S. 169, 178-79 (1989) (sustaining court of appeals' decision rejecting

particular member of the clerk's office staff advised the company or its counsel that compliance with

the rules of the court (or any particular rule or order) was unnecessary.  Nor could Rockwell

reasonably make any such claims.  Instead, Rockwell claims, in effect, that it believed that it was

– for some reason known only to it – exempt from complying with the clear and unambiguous rules

and orders of the court.  Such a claim cannot be seriously credited.  Contrary to Rockwell's

assertions, counsel here have repeatedly "demonstrate[d] a [blatant] disregard [for] pertinent rules."

*See* Pl.'s Supp. Brief at 14 (quoting Napp Systems, Inc. v. United States, 22 CIT 1106, 1107

(1998)).[21]

---

party's request for relief based on "certain statements made by the District Court, as well as certain
actions taken by the District Court, the District Court Clerk, and the Court of Appeals" (which
allegedly led party to believe that its notice of appeal had been timely-filed), where Court of Appeals
concluded that "[a]t no time has the district court or this court ever affirmatively represented to [the
party in question] that their appeal was timely filed, nor did the [party] ever seek such assurance
from either court"; emphasizing that limited exception invoked by party "applies only where a party
has performed an act which, if properly done, would postpone the deadline for filing his appeal and
[where the party] has received *specific assurance* by *a judicial officer* [as opposed to a member of
the court staff] that this act has been properly done") (emphasis added); Prizevoits v. Indiana Bell
Tel. Co., 76 F.3d 132, 134 (7th Cir. 1996) (explaining that "[t]he term 'excusable neglect' . . . refers
to the missing of a deadline as a result of such things as *misrepresentations by judicial officers*")
(emphasis added).

    [21]At issue in Napp was a plaintiff's Motion for Reconsideration of Order of Dismissal and
Reinstatement of Case, where the clerk of the court had automatically dismissed the plaintiff's action
on the Reserve Calendar for lack of prosecution in accordance with USCIT Rule 83(c) because the
plaintiff had failed either to timely remove the action from the Reserve Calendar pursuant to USCIT
Rule 83(b) or to file a timely motion pursuant to USCIT Rule 83(d) to extend the time for the action
to remain on the Reserve Calendar.  Napp, 22 CIT at 1106.  The court denied the plaintiff's motion.
*Id.*, 22 CIT at 1106-07.  *See also*, *e.g.*, Caterpillar Inc. v. United States, 22 CIT 1169, 1170 (1998)
(denying plaintiff's motion for relief from automatic order of dismissal entered by clerk's office
dismissing action on Reserve Calendar for lack of prosecution pursuant to USCIT Rule 83(c),
notwithstanding Government's express consent to reinstatement, where plaintiff made no effort to
seek timely extension of time to remain on Reserve Calendar); Telectronics Pacing Systems, Inc.
v. United States, 20 CIT 393, 393-94 (1996) (denying plaintiff's motion for relief from automatic
order of dismissal entered by clerk's office dismissing action on Reserve Calendar for lack of

Distilled to its essence, at least part of Rockwell's argument seems to be that, because Rockwell's actions were not automatically dismissed for lack of prosecution pursuant to USCIT Rule 83(c) *the very first time* that Rockwell negligently allowed the Reserve Calendar deadline to expire, the court is now *affirmatively* and *permanently estopped* from applying Rule 83(c) in accordance with the specific terms of that rule, which mandate automatic dismissal under the circumstances presented here. But any such argument constitutes "boot-strapping" of the very worst kind. It is similarly impossible for Rockwell to credibly claim on these facts that any conduct of the clerk's office or the court served to "lull[] [the company] into [a] false sense of security." *See* Pl.'s Supp. Brief at 14. As previously noted, two of the 11 actions at issue already have been once dismissed for lack of prosecution. *See* Order to Show Cause at 2; Order of Dismissal (Sept. 13, 2007), entered in Court No. 06-00054; Order of Dismissal (April 20, 2007) entered in Court No. 05-00269. The reasonable response to such dismissals would be hyper-vigilance, not complacency.

Curiously, counsel for Rockwell touts the law firm's "robust system for docketing court deadlines," underscoring that "[the firm's] professional liability insurance policy requires, as a condition of coverage, that the firm have two independent monitoring systems." *See* Pl.'s Supp. Brief at 14. According to Rockwell, "[t]he firm's first system, based on the Time Matters software platform, is administered by . . . the firm's Administrator since [the firm's] founding in 1998." *Id.*

---

prosecution pursuant to USCIT Rule 83(c), notwithstanding Government's express consent to relief requested); Wang Labs., 16 CIT at 471-73, 793 F. Supp. at 1089-90 (denying plaintiff's motion for relief from automatic order of dismissal entered by clerk's office dismissing action on Reserve Calendar for lack of prosecution pursuant to USCIT Rule 83(c)); *cf.*, *e.g.*, Washington Int'l Ins. Co., 16 CIT at 482-83, 793 F. Supp. at 1093 (denying plaintiff's motion for relief from automatic order of dismissal entered by clerk's office dismissing action on Joined Issue Calendar for lack of prosecution); Hamil Textiles, U.S.A. v. United States, 18 CIT 736, 737-39 (1994) (dismissing for lack of prosecution 12 actions on Suspension Disposition Calendar).

Rockwell states that the firm's Administrator "is responsible for entering deadlines . . . into Time Matters, which generates deadline reports on demand. These reports are circulated regularly to the attorneys at the firm." *Id*. According to Rockwell, "[the] second system is predicated on feeds from court CM/ECF systems, including this Court's system, which allows the firm to establish a consolidated calendar based on the records of the courts themselves." *Id*. Rockwell adds that "the firm conducts monthly 'tickler meetings' for attorneys, chaired by [the firm's Administrator] and . . . one of the firm's partners." *Id*. According to Rockwell, "upcoming deadlines are reviewed and identified" at these monthly meetings, "and attorneys are tasked with filing necessary motions or taking other required actions." *Id*. But Rockwell fails to explain how the USCIT Rule 83(d) deadlines for the filing of timely motions for extensions of time to permit actions to remain on the Reserve Calendar have so consistently and so successfully evaded the allegedly "robust" calendaring system on which Rockwell and its counsel assertedly rely. *See* USCIT R. 83(d) (requiring that a motion for an extension of time to remain on the Reserve Calendar "be made at least 30 days prior to the expiration" of the Reserve Calendar deadline itself).

In an apparent effort to explain the failure of the law firm's calendaring system here, Rockwell asserts that "[t]he months of May and June [2014] were tumultuous for counsel," "prevent[ing] the firm from holding its regular Calendar Meetings." *See generally* Pl.'s Supp. Brief at 14-15. However, even if the alleged "tumult" could explain away the *pending* out-of-time motions in the 11 cases at issue here (which it cannot), the recent two months of "tumult" cannot begin to explain the long history of missed deadlines and out-of-time motions in these actions.

According to Rockwell, the "tumultuous" nature of May and June 2014 were due to the mid-June hospitalization of its lead counsel for several days, as well as the relocation of the firm's

offices, and the "robust travel schedule" that the firm's attorneys maintain.  *See* Pl.'s Supp. Brief at 14-15.  As Rockwell itself has noted, however, the deadline for Rockwell's filing of a timely motion for an extension of time to remain on the Reserve Calendar was May 27, 2014.  *See* Pl.'s Supp. Brief at 9; USCIT R. 83(d).  Lead counsel's hospitalization in mid-June 2014 thus logically can in no way explain Rockwell's failure to file a *timely* motion for an extension of time in late May 2014.  Moreover, although Rockwell posits illness as "a circumstance most certainly 'beyond the control of the party'" (*see* Pl.'s Supp. Brief at 14-15), the law on "excusable neglect" is not so readily forgiving.  *See, e.g.*, Cordero-Soto v. Island Finance, Inc., 418 F.3d 114, 117-18 (1st Cir. 2005) (affirming trial court's denial of out-of-time motion for extension of time, where failure to seek timely extension was based on counsel's six-day hospitalization for "pulmonary infection and other conditions," followed by 20 days of rest on physician's orders); Fox Indus., Inc. v. Gurovich, 2006 WL 941791 * 2 (E.D.N.Y. 2006) (denying out-of-time extension of time even though failure to seek timely extension was due to, *inter alia*, counsel's "recent illness, which involved brain surgery").

Moreover, even assuming (notwithstanding all of the above) that Rockwell's failure to timely seek the extensions of time at issue here were – in some fashion, to some minor degree – attributable to the health of its lead counsel, Rockwell fails to explain why another member of the law firm could not have filed a timely motion for an extension of time.  Rockwell itself states that, during lead counsel's illness, "a number of his duties were handled on an emergency basis by the other attorneys in the firm."  Pl.'s Supp. Brief at 15; *see also, e.g.*, Beckles v. City of New York, 2010 WL 1841714 * 3 (S.D.N.Y. 2010) (denying out-of-time motion for extension of time where, *inter alia*, counsel on medical leave could have "asked a colleague in his office to [file a timely motion for an extension of time] if he was unable to do so"); Knott v. Atlantic Bingo Supply, Inc., 2005 WL 3593743 * 1-2

(D. Md. 2005) (denying out-of-time extension of time where counsel who was "incapacitated due

to . . . 'sarcoidosis,' which on occasion required bed rest and treatment by steroids," could have

asked a colleague in his office to ensure that process was served, "or in the alternative at least timely

seek an extension"); Turner v. Hudson Transit Lines, Inc., 1991 WL 123966 * 3 (S.D.N.Y. 1991)

(explaining that counsel claiming "excusable neglect" for failure to file timely motion for extension

of time "could have readily arranged for another attorney to cover for him" and such other attorney

could have sought timely extension).

Similarly, Rockwell never specifies the exact dates of the consolidation and relocation of its

counsel's offices, referring only generally to the "tumult" of May and June 2014.  *See generally* Pl.'s

Supp. Brief at 15.  But, even more to the point, such events ordinarily do not constitute "excusable

neglect."  *See, e.g.,* In re Harlow Fay, Inc., 993 F.2d 1351, 1352-53 (8th Cir. 1993) (holding that

relocation of counsel's offices to another state and reduction of firm's staff not sufficient grounds

for "excusable neglect"); Selph v. Council of City of Los Angeles, 593 F.2d 881, 883 (9th Cir. 1979)

(holding that "confusion" and associated disruption of "normal calendaring practices" as result of

law firm's relocation of offices not "excusable neglect"), *overruled on other grounds*, United Artists

Corp. v. La Cage Aux Folles, Inc., 771 F.2d 1265 (9th Cir. 1985); Knox v. Palestine Liberation

Organization, 229 F.R.D. 65, 69 (S.D.N.Y. 2005) (rejecting claim of "excusable neglect," holding

that "impending move, though it may have caused 'turmoil and disorganization' . . . does not amount

to a factor outside of Defendants' 'reasonable control,' . . . justifying their failure to submit a timely

request for an extension of time").  To the same end, the Supreme Court in Pioneer "[gave] little

weight to the fact that counsel [in Pioneer] was experiencing upheaval in his practice" at the time

of the out-of-time filing there at issue, due to counsel's "withdrawal from his former law firm."  *See*

<u>Pioneer</u>, 507 U.S. at 384, 398.

The busy travel schedules of counsel to Rockwell are an even weaker excuse.  *See*, *e.g.*,

<u>Airline Professionals Ass'n v. ABX Air, Inc.</u>, 109 F. Supp. 2d 831, 834 (S.D. Ohio 2000) (holding

that "[a]n attorney's 'travel schedule' . . . [is a] circumstance[] reasonably anticipated in the legal

profession, and the failure of an attorney to keep track of . . . filing deadlines during a lengthy

absence from the office does not constitute excusable neglect"); *see generally*, *e.g.*, 1 Moore's

Federal Practice § 6.06[3][c], p. 6-45 (explaining, *inter alia*, that counsel's "busy schedule"

generally "does not qualify as 'excusable neglect'").[22]

It is also significant that the action that Rockwell and its counsel failed to timely take – the

filing of routine, *timely* motions for extensions of time to permit the 11 actions at issue to remain on

---

[22]*See also*, *e.g.*, <u>Hawks v. J.P. Morgan Chase Bank</u>, 591 F.3d 1043, 1048 (8th Cir. 2010) (explaining that fact that counsel is "occupied with other hearings does not constitute excusable neglect"); <u>Stonkus v. City of Brockton School Dep't</u>, 322 F.3d 97, 100-01 (1st Cir. 2003) (holding that counsel's "busyness" does not constitute "excusable neglect"); <u>United States v. Dumas</u>, 94 F.3d 286, 289 (7th Cir. 1996) (stating that excusable neglect "requires something more than a simple failure to meet the deadline due to a busy schedule"); <u>Baker v. Raulie</u>, 879 F.2d 1396, 1399-1400 (6th Cir. 1989) (reversing ruling of trial court, and holding that, where attorney who was busy with trial in another matter failed to timely file notice of appeal – "a simple and important document," a mere 37 words long – in case at bar, "[t]he attorney's failure . . . may well  amount to neglect, but it is not excusable"); <u>Pinero Schroeder v. Federal Nat'l Mortgage Ass'n</u>, 574 F.2d 1117, 1118 (1st Cir. 1978) (explaining that "the fact that an attorney is busy on other matters" does not "fall within the definition of excusable neglect," and noting that, indeed, "[m]ost attorneys are busy most of the time and . . . must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences"); <u>Jones v. Giant of Maryland</u>, 2010 WL 3677017 * 7 (D. Md. 2010) (stating that "a heavy caseload or a difficult case" do not constitute "excusable neglect"); <u>Collins v. Midwest Medical Records Ass'n</u>, 2009 WL 606219 * 9 (E.D. Wis. 2009) (holding that "the demands of [counsel's] practice" did not constitute grounds for finding of "excusable neglect"); <u>Eagle Fire, Inc. v. Eagle Integrated Controls, Inc.</u>, 2006 WL 1720681 * 4 (E.D. Va. 2006) (stating that "the busy schedule of [a party's] counsel" does not constitute "excusable neglect"); <u>DuPont</u>, 22 CIT at 603, 15 F. Supp. 2d at 862 (holding that "an active practice with conflicting demands on counsel's time does not constitute a showing of excusable neglect").

the Reserve Calendar – "does not require much time or deliberation," particularly by comparison

to the time that Rockwell contends the parties were devoting to resolving the substantive merits of

those cases.  *See*, *e.g.*, Baker v. Raulie, 879 F.2d 1396, 1399-1400 (6th Cir. 1989) (reversing district

court's finding of "excusable neglect" where attorney was in trial in another matter from August 22

to September 2 deadline for filing notice of appeal, reasoning that "[h]ere, the notice of appeal

contains 37 words.  Even if [the] attorney was in trial 12 hours a day continuously from August 22

onwards, he could have found a few minutes sometime before September 2 to draft and deliver to

the district court such a simple and important document"); Pinero Schroeder v. Federal Nat'l

Mortgage Ass'n, 574 F.2d 1117, 1118 (1st Cir. 1978) (rejecting claim of "excusable neglect,"

emphasizing that "[f]iling a notice of appeal does not require much time or deliberation").

It is worth noting that, although Rockwell expressly acknowledges in the abstract the

primacy of the reason for the delay in filing as a factor in evaluating the existence of "excusable

neglect" –  including, in particular "whether it [*i.e.*, the delay] was within the reasonable control of

the movant" – Rockwell never addresses the "control" issue in the context of the specific facts of

these 11 cases.  *See* Pioneer, 507 U.S. at 395 (highlighting significance of "the reason for the delay,

*including whether it* [*i.e., the delay*] *was within the reasonable control of the movant*") (emphasis

added).

Here, it is clear that none of the reasons cited by Rockwell precluded the filing of timely

motions for extensions of time.  Nothing that the Office of the Clerk of the Court did or did not do

precluded Rockwell from filing timely motions for extensions of time.  By the same token, because

May 27, 2014 was the deadline for filing timely motions for extensions of times, there is nothing

about the hospitalization of Rockwell's lead counsel several weeks thereafter that prevented

Rockwell from seeking timely extensions of time.  Moreover, there is nothing about either the relocation of Rockwell's counsel's offices or the travel schedules of those individuals that can be said to have been beyond their reasonable control, as Pioneer used the phrase, and to have prevented Rockwell from timely seeking extensions.

Under these circumstances, the most important of the four Pioneer factors – *i.e.*, the reason for Rockwell's delay in seeking an extension of time – weighs decisively against a finding that Rockwell's neglect here is "excusable."

D.  Good Faith

The last of the four factors specifically identified in Pioneer to be considered in determining the existence of "excusable neglect" is "whether the movant acted in good faith" in  attempting to fulfill its obligations in a timely fashion.  *See* Pioneer, 507 U.S. at 395.  As discussed immediately above, courts across the country have identified "the reason for the delay, including whether it [*i.e.*, the delay] was within the reasonable control of the movant" as the single most important factor in an "excusable neglect" analysis.  In contrast, "rarely in the decided cases is the absence of good faith at issue."  Silivanch, 333 F.3d at 366.  The egregious facts make this one of those rare cases.

Rockwell argues that its good faith "is evidenced primarily by the amount of work it has done, both internally and with counsel for the Government, in seeking to resolve these [11] technically complex cases."  *See generally* Pl.'s Supp. Brief at 17-18.  Rockwell's argument completely misses the mark.

Rockwell's diligence in pressing the merits of its actions may be relevant to the "good cause" showing which is the predicate for a timely extension of time.  Here, however, Rockwell seeks an

out-of-time extension of time, and the issue instead is whether or not "excusable neglect" exists. As such, the relevant "good faith" inquiry here is whether – although Rockwell obviously did not succeed – Rockwell demonstrated good faith either by taking steps to seek to remove the 11 actions at issue from the Reserve Calendar before the June 23, 2014 deadline for doing so, or by taking steps to seek to extend the time for those actions to remain on the Reserve Calendar before the May 27, 2014 deadline for filing timely motions for extensions of time.[23]  There is no evidence to indicate that Rockwell made any effort toward either of these ends.  And there is compelling evidence that Rockwell did not.

In one typical type of "excusable neglect" case, "good faith" is not at issue, because the movant's claim is that it was mistaken about some fact or about the operation of some particular rule and thus was working in good faith to meet the wrong (mistaken) deadline.  *See*, *e.g.*, United States v. $39,480.00, 190 F. Supp. 2d 929, 932 (W.D. Tex. 2002) (finding that Government acted diligently and in good faith where one-day delay in filing document was attributable to incorrect date-stamp on document, which served as basis for Government's calculation of filing deadline).  In other "excusable neglect" cases, "good faith" is not an issue because the movant's claim is that it was working in good faith to meet the (correct) deadline but was unable to do so due to some (assertedly

---

[23]*See generally*, *e.g.*, Morrison v. Anadarko Petroleum Corp., 2011 WL 2464178 * 1 (W.D. Okl. 2011) (finding no "excusable neglect" where movant fails to "set forth any reason why she did not move to continue the deadline . . . prior to its expiration"); Knox v. Palestine Liberation Organization, 229 F.R.D. at 69 (rejecting claim of "excusable neglect" in absence of showing that "impending move" prevented submission of "a timely request for an extension of time"); Wilson v. David, 2010 WL 610714 * 4 (N.D.N.Y. 2010) (rejecting claim of "excusable neglect" where movant experienced technology problems but made no effort to request timely extension of time or to file and serve documents using conventional methods); Tenenbaum v. Williams, 967 F. Supp. 606, 612 & n.6 (E.D.N.Y. 1995) (finding no "excusable neglect" where movants failed to show "why they did not request . . . an extension" prior to applicable deadline).

unexpected) development.

In contrast, in this case Rockwell's track record speaks for itself, and it speaks volumes.  Not only does Rockwell not even allege (much less proffer any proof) that it took steps in good faith to secure timely extensions of time in the 11 actions at issue, but – indeed – the procedural history of these actions belies any suggestion that Rockwell's practice in general has been to make good faith efforts to track and comply with applicable deadlines.  As a practical matter, the exercise of good faith by Rockwell and its counsel in this context *could not* yield the abysmal track record of out-of-time motions for extensions of time that Rockwell has amassed.  To the contrary, Rockwell's track record smacks of a blatant disregard for the rules of the court governing actions on a Reserve Calendar.

In Pioneer, the Supreme Court laid out the "range of possible explanations for a party's failure to comply with a court-ordered filing deadline":

> At one end of the spectrum, a party may be prevented from complying [with a deadline] by forces beyond its control, such as by an act of God or unforeseeable human intervention.  At the other [end of the spectrum], a party simply may choose to flout a deadline.  In between lie cases where a party may *choose* to miss a deadline although for a very good reason, such as to render first aid to an accident victim discovered on the way to the courthouse, as well as cases where a party misses a deadline through inadvertence, miscalculation, or negligence.

Pioneer, 507 U.S. at 387-88.  Clearly these 11 cases are not at the end of the spectrum where a movant is prevented from complying with the applicable deadlines "by forces beyond its control, such as . . . an act of God or unforeseeable human intervention."  Nor are these in-between cases, where a movant chooses to miss a deadline for a very good reason "such as to render first aid to an accident victim discovered on the way to the courthouse" or where a movant "misses a deadline through inadvertence, miscalculation, or negligence."  According to Rockwell, it was basically

oblivious to the applicable deadlines (much as it has ignored such deadlines in these cases so frequently in the past, relying heavily (albeit unreasonably) on the clerk's office staff to monitor the dockets in Rockwell's actions and to alert counsel in the event of impending dismissals). These cases thus fall close to the far end of the spectrum outlined in <u>Pioneer</u>, near the parties that have made a choice to flout deadlines.

As this court has previously underscored in <u>Napp</u> (which – like the 11 actions at issue here – involved USCIT Rule 83(c), concerning the court clerk's entry of automatic orders of dismissal, dismissing actions on the Reserve Calendar for lack of prosecution):

> [Lawyers] . . . have the duty to protect their clients by ensuring that important filing deadlines are met; they may not follow careless procedures that demonstrate a disregard or ignorance of pertinent rules. *The concept of a time limitation for filing is basic.* A court may insist upon compliance with its local rules and it may refuse to set aside a judgment or order . . . even when there is no showing of substantial prejudice. <u>U.S. v. Proceeds of Sale of 3,888 Pounds Atlantic Sea Scallops,</u> 857 F.2d 46, 49 (1st Cir. 1988). "Neither ignorance nor carelessness on the part of a litigant or his attorney provides grounds for relief under Rule 60(b)(1)." <u>Avon Products, Inc. v. United States,</u> 13 CIT 670, 672 (1989) (citations omitted).

<u>Napp</u>, 22 CIT at 1107 (quoting <u>Wang Labs., Inc. v. United States,</u> 16 CIT 468, 472, 793 F. Supp. 1086, 1089 (1992)) (emphasis added).

The deadlines that are established in court rules and court orders must mean something. They must be respected and honored by the parties and they must be enforced by the court, unless, of course, they are extended pursuant to a timely-filed motion. As the Second Circuit has sagely observed in one well-known case, "the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced – where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar." <u>Silivanch</u>, 333 F.3d at 368.

To find Rockwell's neglect here to be "excusable" would serve only to condone the company's continued "carelessness and inattention in practice" and would send a message that other litigants might expect comparable treatment at the hands of the court in the future. *See* Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc., 270 F.3d 1, 8 (1st Cir. 2001). Both would be unwarranted results.

Here – as in one leading Seventh Circuit case – "the rule is crystal clear, the error egregious, [and] the excuses so thin as to leave the lapse not only unexcused but inexplicable." Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 464 (8th Cir. 2000) (quoting Prizevoits v. Indiana Bell Tel. Co., 76 F.3d 132, 134 (7th Cir. 1996)). In such circumstances, the haunting spectre is of a rapid race to the bottom: "If we were to apply the excusable neglect standard to . . . deem [Rockwell's] neglect excusable in this case, it is hard to fathom the kind of neglect that we would not deem excusable." Lowry, 211 F.3d at 464. Where would it end?

Two principles at the heart of the concept of the rule of law are (1) that rules and laws are applied as they are written, and (2) that rules and laws apply with equal force to all. In the grander scheme of things, the conduct of Rockwell and its counsel is fundamentally unfair to other practitioners before the Court, who undertake the time, effort, and expense required to scrupulously maintain and monitor their calendars, in order to ensure that they comply with all rules and orders of the Court and meet all deadlines, including those applicable to Reserve Calendar actions. So too the conduct of Rockwell and its counsel places judges and the clerk's office staff in the position of either outright denying relief to Rockwell based on the company's unrepentant, wholesale failure to fulfill even its most basic procedural obligations or, alternatively, swallowing hard, holding their collective noses, and joining Rockwell in diminishing and debasing the rule of law (as the court does

here) by granting the requested relief notwithstanding the company's systemic, flagrant, and

repeated failures and refusals to comply with court orders and court rules.

It is an untenable situation, and one that cannot continue.

### V.  Conclusion

For the reasons set forth above, Plaintiff's Amended Consent Motion for Leave to File Out

of Time, and to Extend Time to Remain on Reserve Calendar is granted as to all 11 captioned

actions, with the understanding that great significance is being attached to the Government's

representations as to its lack of prejudice (notwithstanding the fact that the greatest weight should

be accorded to the reason for a movant's delay), with the understanding that judgment is

nevertheless expressly withheld as to whether – balancing all applicable factors and circumstances

– Rockwell has made (or could make) the requisite showing of "excusable neglect," and with the

understanding that – particularly in light of Plaintiff's history of repeated out-of-time motions in

these actions – Rockwell should expect no leniency whatsoever in the future.

A separate order will enter accordingly.


                                        /s/ Delissa A. Ridgway
                                    _____
                                          Delissa A. Ridgway
                                                Judge


Dated: August 18, 2014
         New York, New York